# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ANTHONY D. DINASO,

      Petitioner,

vs.                                                      CASE NO. 8:11-cv-415-T-27EAJ

SECRETARY OF DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## O R D E R

Petitioner, a State of Florida inmate proceeding *pro se*, petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 and challenges the validity of his convictions for (1) armed grand theft of a motor vehicle, (2) armed grand theft of a boat, (3) armed aggravated fleeing and eluding, (4) armed aggravated battery on a law enforcement officer, (5) armed attempted second-degree murder of a law enforcement officer, and (6) felonious possession of a firearm. Respondent argues that Petitioner's claims should be dismissed for procedural reasons or for failure to meet the threshold requirements of 28 U.S.C. § 2254(d) and (e).

## Facts[1]

Petitioner stole a Tampa Electric Company ("TECO") truck, a twenty-five foot boat, and the boat's trailer. The boat owner's father observed his son's boat being pulled behind the TECO truck

---

[1] This factual summary derives from the recitation of facts at the change of plea hearing. (Doc. 21, Ex. 1G, transcript of Aug. 29, 2005, change of plea hearing, pp. 12-14).

and called the police.  Pinellas County Sheriff's Deputy Chris Taylor responded and pursued the truck and trailer.  The driver, later identified as Petitioner, eventually pulled over to the side of the road and Deputy Taylor pulled in behind him.  Petitioner put the truck in reverse and rammed Deputy Taylor's vehicle causing it to stall.  Petitioner fled the scene and Deputy Chris Nawrocki continued the pursuit.  Deputy Nawrocki attempted to pull alongside Petitioner to force him to pull over. Petitioner began to deliberately fishtail the boat and trailer into Deputy Nawrocki's vehicle causing the fenders to lock together.  Petitioner then pulled Deputy Nawrocki's police cruiser into oncoming traffic but eventually had to pull off the road to avoid a collision.

Deputy Nawrocki began to shoot at Petitioner's vehicle.  Deputy Taylor arrived at the scene and also began shooting at Petitioner to try to free Deputy Nawrocki.  Petitioner was struck in his side by a bullet and swerved off the road into a tree.  Petitioner was observed in the stolen truck wearing a shoulder holster and a cocked and loaded gun was found on the floor of the stolen truck. Petitioner was arrested and charged with (1) armed grand theft of a motor vehicle, (2) armed grand theft of a boat, (3) armed aggravated fleeing and eluding, (4) armed aggravated battery on a law enforcement officer, (5) armed attempted second-degree murder of a law enforcement officer, and (6) felonious possession of a firearm.

### **Procedural background**

Petitioner pleaded guilty to all six charges with an agreement for a fifty-year sentencing cap for each conviction.  Petitioner was sentenced as a habitual felony offender to concurrent terms of thirty years imprisonment for each of the armed grand theft convictions and the felonious firearm possession conviction, and to concurrent terms of fifty years imprisonment for the armed aggravated fleeing and eluding conviction, the armed aggravated battery on a law enforcement officer

conviction, and the armed attempted second-degree murder of a law enforcement officer conviction. Petitioner appealed.  The state district court of appeal affirmed Petitioner's convictions and sentences in a *per curiam* decision without a written opinion.  (Doc. 21, Ex. 7).

Petitioner filed a *pro se* motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850. (Doc. 21, Ex. 9A).  The state post-conviction court rejected the motion after an evidentiary hearing and Petitioner appealed.  (Doc. 21, Exs. 9J, 11).  The state district court of appeal affirmed the denial of the Rule 3.850 motion in a *per curiam* decision without a written opinion.  (Doc. 21, Ex. 16).

Petitioner filed his Section 2254 petition on February 24, 2011.  Respondent concedes that the petition is timely.  Petitioner presents five grounds for relief:[2]

| | |
|---|---|
| **Ground One:** | Petitioner's conviction for felonious possession of a firearm violates the prohibition against double jeopardy |
| **Ground Two:** | The state trial court committed fundamental error by "reclassifying the charge of aggravated battery o[n] a law enforcement officer from a second-degree felony to a first-degree felony" |
| **Ground Three:** | The state trial court abused its discretion by denying Petitioner appointment of counsel for the Rule 3.850 evidentiary hearing, resulting in a violation of the Sixth Amendment |
| **Ground Four:** | Trial counsel rendered ineffective assistance by misadvising Petitioner about the maximum sentence he would receive, resulting in a denial of due process, equal protection, and the effective assistance of counsel, rendering the plea involuntary |
| **Ground Five:** | Trial counsel rendered ineffective assistance by not moving for a competency evaluation pursuant to Fla. R. Crim. P. 3.210(b), resulting in a denial of due process, equal |

---

[2] Petitioner designates the five grounds in his petition as "one," "one(a)," "two," " two(a)," and "two(a)."  (Doc. 1, pp. 7, 10, 13, 15, 20).  Each ground presents a distinct claim for relief.  For ease of reference, the court renumbers the grounds sequentially as Grounds One through Five.

> protection, and the effective assistance of counsel, rendering
> the plea involuntary

Upon review, the petition must be DENIED.

### Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this

proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*,

531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court

review of state court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in the
> > State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this

deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court
> to grant a state prisoner's application for a writ of habeas corpus with respect to
> claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may
> issue only if one of the following two conditions is satisfied--the state-court
> adjudication resulted in a decision that (1) "was contrary to . . . clearly established
> Federal Law, as determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of . . . clearly established Federal law, as
> determined by the Supreme Court of the United States." Under the "contrary to"
> clause, a federal habeas court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this Court on a question of law or if the state
> court decides a case differently than this Court has on a set of materially

4

indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  *See Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 693.  Federal courts must afford due deference to a state court's decision.  "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S.766, 779 (2010).

In a *per curiam* decision without written opinion the state district court of appeal affirmed the denial of Petitioner's Rule 3.850 motion.  The *per curiam* affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).

Petitioner bears the burden of overcoming a state court factual determination by clear and convincing evidence.  "[A] determination of a factual issue made by a State court shall be presumed

5

to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by

clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies

to a finding of fact, but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831,

836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).  The state courts' rejection of Petitioner's

post-conviction claims warrants deference in this action.

## Standard of Review for Ineffective Assistance of Counsel

*Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel

claim:

> The law regarding ineffective assistance of counsel claims is well settled and well
> documented.  In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80
> L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing
> ineffective assistance of counsel claims.  According to *Strickland*, first, the defendant
> must show that counsel's performance was deficient.  This requires showing that
> counsel made errors so serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second, the defendant must
> show that the deficient performance prejudiced the defense.  This requires showing
> that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable.  *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice.  466 U.S.

at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both

components of the inquiry if the defendant makes an insufficient showing on one.");  *Sims v.*

*Singletary*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness

claims on either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional judgment."

*Strickland*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the

6

reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Petitioner must demonstrate that counsel's error prejudiced the defense. *Strickland v. Washington*, 466 U.S. at 691-92. To meet this burden, Petitioner must show a reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded guilty and would have insisted on proceeding to trial. *Hill v. Lockhart*, 474 U.S. 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. Petitioner cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. . . . [T]he issue is

not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

## Discussion

**Grounds One and Two**

In Ground One Petitioner contends that his conviction for felonious possession of a firearm violates the "well established double jeopardy clause"[3] because he was also convicted of possessing a firearm while committing each of the other offenses. Citing two state cases, Petitioner argues that the state appellate court's denial of this claim was "based on the state court's unreasonable application of federal law." (Doc. 1, p. 9). In Ground Two Petitioner contends that the state trial court judge committed fundamental error by "reclassifying the charge of aggravated battery o[n] a law enforcement officer from a second-degree felony to a first-degree felony." (Doc. 1, p. 10). Petitioners claims that this error had a material effect upon his sentence, resulting in actual prejudice. Respondent argues that Grounds One and Two are not cognizable claims for federal habeas relief and, alternatively, that the federal dimension of these grounds is unexhausted, rendering both grounds procedurally barred. Petitioner in his reply does not dispute either contention.

Federal habeas relief for a person in custody pursuant to the judgment of a state court is available only on the ground that the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). *See also Swarthout v. Cooke*, ___ U.S. ___, 131 S. Ct. 859, 861, 178 L. Ed. 2d 732 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the

---

[3] Petitioner does not state whether he asserts his double jeopardy violation under state law (as he did on direct appeal) or federal law. To the extent he intends to present the same state law argument he advanced in the state appellate court, the claim is not cognizable as discussed *infra*.

Constitution or laws or treaties of the United States.") (internal quotations and citations omitted); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."); *Krasnow v. Navarro*, 909 F.2d 451, 452 (11th Cir.1990) ("A writ of habeas corpus is available in federal court only in cases of constitutional error."). Petitioner's state law double jeopardy claim and his state law challenge to the degree of felony assigned to the aggravated battery charge are not cognizable bases for federal habeas relief.

Notwithstanding cognizability, to the extent Petitioner asserts in his petition a federal double jeopardy violation (Ground One) or a federal due process violation (Ground Two), neither claim is exhausted. Before a federal court may grant habeas relief, a federal habeas petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1)(A), (C). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted)). To exhaust a claim, a petitioner must present the state court with the particular legal basis for relief in addition to the facts supporting the claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). The prohibition against raising an unexhausted claim in federal court

9

extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement that a federal habeas corpus petitioner exhaust available state court remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  A petitioner must "do more than scatter some makeshift needles in the haystack of the state court record." *McNair v. Campbell,* 416 F.3d 1291, 1302-03 (11th Cir. 2005) (quotations and citations omitted).  A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese,* 541 U.S. 27, 32 (2004).

Petitioner, relying upon only state law, argued in his *pro se* direct appeal brief[4] that (1) his "conviction and sentence [for] felonious possession of a firearm violated [his] double jeopardy rights where he was validly convicted on other counts which were enhanced for use of the same firearm," and (2) the state trial court committed fundamental error under state law by re-classifying a second-degree felony to a first-degree felony.  (Doc. 21, Ex. 6, pp. 14, 17).  Petitioner failed to alert the state appellate court of either a substantive federal double jeopardy claim or (liberally construing Ground Two) a federal due process claim.  *See Anderson v. Harless*, 459 U.S. 4, 5-6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.").  Petitioner's failure to present the federal

---

[4] Appellate counsel filed an *Anders* brief on Petitioner's behalf.  (Doc. 21, Ex. 3).  Afforded the opportunity by the state appellate court (Doc. 21, Ex. 4), Petitioner filed a *pro se* brief containing two grounds for appeal.  (Doc. 21, Ex. 6).

component of either Ground One or Ground Two on direct appeal deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. Consequently, the exhaustion requirement is not satisfied. *Henry*, 513 U.S. at 365. *See also Baldwin v. Reese*, 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"). As a result, Grounds One and Two are procedurally defaulted.

Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). In other words, he must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

Petitioner fails to demonstrate cause and prejudice excusing the default of his federal claims. *Carpenter*, 529 U.S. at 451; *Carrier*, 477 U.S. at 495-96. He neither alleges nor shows that the fundamental miscarriage of justice exception applies. *Henderson*, 353 F.3d at 892. Because Petitioner fails to proffer specific facts showing an exception to procedural default, Grounds One and Two are procedurally barred from federal review.

**Ground Three**

Petitioner presented to the state post-conviction court in his Rule 3.850 motion two claims of ineffective assistance of trial counsel. (Doc. 21, Ex. 9A). The state post-conviction court granted Petitioner an evidentiary hearing on both grounds. (Doc. 21, Ex. 9E). Petitioner moved for appointment of counsel to represent him at the hearing. The state post-conviction court denied the motion and Petitioner proceeded *pro se* at the evidentiary hearing. (Doc. 21, Exs. 9F, 9G). Petitioner contends that the state trial court abused its discretion by denying him the appointment of counsel, resulting in a violation of the Sixth Amendment.

12

"There is no constitutional right to an attorney in state post-conviction proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citations omitted).  A prisoner has no due process right to appointed counsel in a post-conviction proceeding.  *Pennsylvania v. Finley*, 481 U.S. 551, 555-56 (1987).   The state post-conviction court's denial of Petitioner's motion to appoint post-conviction counsel is neither contrary to, or an unreasonable application, of clearly established law.  *See* 28 U.S.C. § 2254(d)(1), (2).  Ground Three warrants no relief.

**Ground Four**

Petitioner alleges he was denied due process, equal protection, and effective assistance of counsel when counsel "unfoundedly assured and misadvised [P]etitioner he would be sentenced to the bottom of the guidelines (32 years) if Petitioner pled guilty in exchange for a (50) year cap, rendering Petitioner's plea involuntary in violation of his 6th and 14th Amendment rights to the U.S. Constitution."[5]  (Doc. 1, p. 15).  Petitioner argues that counsel told him that he "would get [Petitioner] the bottom of the guidelines, the 32 years with a split sentence, 20 [years] in, 12 [years] out," based upon Petitioner's mental health issues and "the mitigating circumstances of cognitive disorder [and] polysubstance abuse disorder."  (Doc. 1, p. 16).  Petitioner alleges that counsel erroneously advised him that he could garner the thirty-two year sentence because "no judge in his right mind would sentence anybody to the max on a cap because nobody after [Petitioner] would accept a cap from [the judge] again and due to the fact that the police shot [Petitioner], they will feel like they got street justice and grant [Petitioner] the 20 in and 12 out at the downward departure

---

[5]  Generally, a voluntary plea waives antecedent non-jurisdictional grounds of ineffective assistance of trial counsel.  *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000), *cert. denied*, 531 U.S. 919 (2000).  To the extent that the allegations of ineffective assistance of trial counsel presented in Grounds Four and Five can be construed as bearing upon the voluntariness of Petitioner's plea, the grounds are not waived by entry of the plea and are reviewed on the merits.

hearing." (Id. at p. 17). Petitioner contends that absent this erroneous advice, he would have proceeded to trial.

The state post-conviction court afforded Petitioner an evidentiary hearing on this ground at which Petitioner testified that counsel made the aforementioned statements. (Doc. 21, Ex. 9G, pp. 6-8, 12-13). Trial counsel testified that he explained to Petitioner the implications of the fifty-year sentencing cap and did not advise Petitioner that he would receive a thirty-two year sentence rather than a fifty-year sentence.[6]

---

[6] Counsel testified on direct examination:

Q:     The defendant claims that he agreed to a sentencing cap of 50 years only because you assured him that he would only get 32 years. Did you make a promise like that to the defendant?

A:     No.

Q:     He also claims that you promised him as part of that 32 years he would only serve 20 years in prison and then have 12 years probation. Did you make any promise along those lines?

A:     That was what we would have liked to have seen happen but that was not what was promised would happen.

Q:     Okay. And were you clear to him that that was just what you were seeking?

A:     Yes. I mean, it's clear from the plea negotiations that we couldn't even cap at the bottom of the guidelines, nor could we cap it at 40 [years], which was our next offer. The only cap we could get was 50. Obviously, if I was certain that we were going to get 32 years or less, then we would have gotten the 32 years at the change of plea hearing instead of having to agree to a cap.

Q:     Okay. And so, the reason to enter the plea to the cap and then proceed to the sentencing, what was your goal at that sentencing hearing?

A:     Well, I mean, the main goal was to avoid a life sentence after a jury trial. The second goal was to get a cap that was as low as possible so that we knew what the maximum sentence would be. Mr. Dinaso had always wanted to present mitigation in an attempt to get a departure sentence. By entering the cap, that allowed us to possibly present the mitigation.

Q:     Okay. Did you explain to him what the terms of that cap were?

A:     Yes.

Q:     Okay. So you explained that the court could impose 50 years[?]

(continued...)

Following the evidentiary hearing the state post-conviction court rejected Petitioner's ground on ineffective assistance of counsel:

> The Defendant alleges counsel was ineffective in advising him that if he agreed to a 50-year cap on his sentence as part of the plea agreement, he would actually receive a sentence of 32 years, which represented the bottom of the sentencing guidelines. The Defendant's counsel . . . testified at the evidentiary hearing that he told the Defendant he believed the Defendant would receive a sentence below the maximum and that he sought a 32-year sentence.  [Counsel] testified, however, that he did not tell the Defendant that he was certain to receive a sentence below 50 years.

---

[6](...continued)
A:        Yes.

(Doc. 21, Ex. 9J, pp. 23-24).

Counsel testified on cross-examination by Petitioner:

Q:        Do you remember - - what did you tell me pertaining to our discussions about pleading to a cap?

. . . .

A:        I would have explained to you what a cap was.

Q:         - - in regards to after we came in and the judge told me that the only one he's inclined to offer me is a cap of 50 years.  Not saying that I'm going to get the maximum cap, was his words to me.  Do you remember what we talked about when we went back into that little room?

A:        No.

Q:        Do you remember telling me that no judge in his right mind would give me the max on the cap because nobody after me would accept a cap from him?

A:        I don't remember saying those words, no.

Q:        Okay.  Do you remember telling me that, all in all, that they would feel they got street justice for shooting me and maybe feel inclined to feel more lenient towards me?

A:        No.  I don't remember saying that.

(Doc. 21, Ex, 9G, pp. 33-34).

Furthermore, the Defendant acknowledged that he understood the 50-year cap and stated that he understood he faced a sentence of 50 years.[7]

The court is faced with the conflicting testimony of the Defendant and [counsel]. When the court is called upon to make a factual determination and is presented with conflicting testimony, it is within its province to weigh the credibility of the witnesses to resolve the factual dispute. *See Alston v. State*, 894 So. 2d 46, 54 (Fla. 2004). After reviewing the testimony and weighing the credibility of the evidence, the court finds that counsel advised the Defendant that counsel believed there to be a strong possibility that the Defendant would receive a sentence of less than 50 years. The court finds that counsel did not assure the Defendant that his sentence would be less than 50 years and counsel did not provide ineffective assistance.

(Doc. 21, Ex. 9J, p. 2).

In denying relief on this ineffective assistance claim, the state post-conviction court found counsel more credible than Petitioner. The state post-conviction court's credibility determination is presumed correct. *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over" the petitioner's.), *cert. denied*, 526 U.S. 1047 (1999); *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), *cert. denied*, 513 U.S. 1161 (1995). Relying only upon his unsupported contention, Petitioner fails to overcome the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Moreover, even if counsel promised Petitioner a particular sentence or misadvised Petitioner about his sentence, Petitioner cannot establish his ineffective assistance of counsel claim. The law is clear that an inaccurate prediction about sentencing alone will not generally be sufficient to sustain

---

[7] The state post-conviction court judge inquired of Petitioner at the evidentiary hearing about Petitioner's understanding of a sentencing "cap." Petitioner testified that a "cap" is "the max you can receive on a sentence." (Doc. 21, Ex. 9G, p. 7). Petitioner testified on cross-examination that he was, in fact, aware of the fifty-year sentencing cap. (Id. at pp. 12-13).

16

a claim of ineffective assistance of counsel.  *See United States v. Himick*, 139 Fed. App'x 227, 228-29 (11th Cir. 2005) ("[A] defendant's reliance on an attorney's mistaken impression about the length of his sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence."); *United States v. Pease*, 240 F.3d 938, 940-41 (11th Cir. 2001) (rejecting argument by defendant sentenced as a career offender that his plea was not knowing and voluntary because he had relied on counsel's prediction that his potential sentence under the plea agreement would be anywhere from five to ten years when, in fact, he faced a ten-year minimum mandatory sentence).   Here, Petitioner does not establish deficient performance by counsel.  Under *Strickland*, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial."  *Walker v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984).   The record shows that counsel met that obligation in Petitioner's case.[8]

Notwithstanding, even assuming deficient performance, Petitioner fails to establish resulting prejudice necessary to obtain federal relief.  *See Hill*, 474 U.S. 59.  One of the benefits of Petitioner's plea was the fifty-year sentencing cap which precluded his receiving a possible life sentence.[9] Petitioner does not establish that, absent counsel's allegedly erroneous advice about sentencing, he

---

[8] Petitioner alleges that counsel's erroneous sentencing advice resulted in a denial of his rights to due process and equal protection. (Doc. 1, p. 15).  Because Petitioner fails to establish his claim of ineffective assistance of counsel, he cannot establish his concomitant due process and equal protections claims.

[9] The prosecutor advised the trial court judge at the change of plea hearing that Petitioner, at that time, was a twenty-seven time convicted felon.  (Doc. 21, Ex. 1G, transcript of Aug. 29, 2005, change of plea hearing, p. 5).  The prosecutor stated that, upon conviction after a trial, he would seek "a life sentence for the attempted second-degree murder . . . [and] a consecutive life sentence on the armed aggravated battery . . . ."  (Id. at p. 6).

would have proceeded to trial.  Because Petitioner cannot establish prejudice, he cannot obtain relief

on this ground of ineffective assistance of counsel.  *See Strickland*, 466 U.S. at 697.  Petitioner fails

to meet his burden of proving that the state court unreasonably applied *Strickland* or unreasonably

determined the facts in rejecting this ground of ineffective assistance of counsel.  *See* 28 U.S.C.

§ 2254(d).

To the extent that Petitioner challenges the validity of his guilty plea based upon the alleged

misadvice of counsel about sentencing, Petitioner cannot obtain relief.[10]  "A reviewing federal court

may set aside a state court guilty plea only for failure to satisfy due process:  'If a defendant

understands the charges against him, understands the consequences of a guilty plea, and voluntarily

chooses to plead guilty, without being coerced to do so, the guilty plea will be upheld on federal

review.'"  *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646

F.2d 873, 882 (5th Cir. 1980)).  Although a defendant's statements during a plea colloquy are not

insurmountable, "the representations of the defendant [at a plea hearing], as well as any findings

made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral

proceedings.  Solemn declarations in open court carry a strong presumption of verity."  *Blackledge*

*v. Allison*, 431 U.S. 63, 73-74 (1977).  "[W]hen a defendant makes statements under oath at a plea

colloquy, he bears a heavy burden to show his statements were false."  *United States v. Rogers,* 848

F.2d 166, 168 (11th Cir. 1988).

Petitioner presents no challenge to the plea colloquy.  Aside from his own self-serving

allegations, Petitioner produces no evidence to substantiate his claim that he involuntarily entered

---

[10]  Although Petitioner challenged in his Rule 3.850 motion the voluntariness of his guilty plea based upon counsel's alleged misadvice about sentencing, the state post-conviction court did not address that aspect of Petitioner's claim in its order denying relief.

his guilty plea.  His sworn statements at the colloquy demonstrate that he understood both the charges against him and the consequences of pleading guilty.  (Doc. 21, Ex. 1G, transcript of Aug. 29, 2005, change of plea hearing, pp. 9-11).  *See Stano*, 921 F.2d at 1141.  Petitioner presents no evidence establishing that he (1) did not want to proceed with his plea, (2) that his sworn testimony during the plea colloquy was false, or (3) that he was coerced into entering his plea.  The plea colloquy also shows that Petitioner understood that he faced a possible fifty-year sentence.  (Doc. 21, Ex. 1G, transcript of Aug. 29, 2005, change of plea hearing, p. 11).  Petitioner's unsubstantiated allegations fail to overcome the strong presumption of verity afforded his sworn statements at the plea colloquy.  *Blackledge*, 431 U.S. at 73-74.  Petitioner fails to establish that he involuntarily entered his plea.

**Ground Five**

Before Petitioner entered his plea, counsel requested that Dr. Valerie McClain, a licensed psychologist, conduct a psychological evaluation of Petitioner to assess potential mitigating factors for sentencing.  Dr. McClain opined that, at the time she evaluated Petitioner, he was affected by several mental health issues.[11]  Based on Dr. McClain's evaluation, Petitioner alleges the following basis for relief:

---

[11]  Dr. McClain's report summarizes her findings as follows:

In summary, Mr. Dinaso is a 27-year-old Caucasian male who was referred for a confidential psychological evaluation to assess mitigating factors for sentencing.  He presents with a history of mental health issues, including Bipolar Disorder, Posttraumatic Stress Disorder, and Cognitive Disorder NOS.  He also presents with Polysubstance Dependence.  Results support the need for dual diagnosis treatment.  To date, he has not received any psychiatric treatment and only a limited amount of substance abuse treatment.  He similarly needs to be on medication.  His history of a head injury is an important factor likely affecting his ability to plan and successfully anticipate the impact of his behavior and consequences.

(Doc. 21, Ex. 9A, attach. A, p. 5).

19

Petitioner was denied due process and equal protection under the law and effective assistance when counsel failed to file a motion for examination pursuant to Fla. R. Crim. P. 3.210(b)[12] after information pertaining [to] Petitioner's history of mental health issues and brain damage was made available, rending Petitioner's guilty plea involuntary in violation of his 6th and 14th Amendment rights to the U.S. Constitution.

(Doc. 1, p. 20). In his reply Petitioner further argues that counsel failed to advise him of a "viable" insanity defense. (Doc. 24, p. 1). Petitioner claims that, "[a]lthough Dr. McClain's determinations did not specifically address [his] mental state at the time of the crimes, as is required under the M'Naghten Rule, counsel should have recognized that [Petitioner was unable to understand the nature and quality of his acts or their consequences] and requested further examination." (Id. at p. 2). Petitioner alleges that Dr. McClain's diagnoses should have caused counsel to doubt Petitioner's competence to enter a plea and that, "had other experts evaluated him, they would have found him incompetent." (Id. at p. 3). Petitioner claims that "an insanity defense was available to him pursuant to the M'Naghten Rule[13] and counsel was ineffective for not recognizing and advising him of this fact." (Id. at p. 4).

Petitioner acknowledged on direct examination at the Rule 3.850 evidentiary hearing that counsel initiated Dr. McClain's examination and that she did not find him incompetent. (Doc. 21,

---

[12] Florida Rule of Criminal Procedure 3.210(b) states:

Motion for Examination. If, at any material stage of a criminal proceeding, the court of its own motion, or on motion of counsel for the defendant or for the state, has reasonable ground to believe that the defendant is not mentally competent to proceed, the court shall immediately enter its order setting a time for a hearing to determine the defendant's mental condition, which shall be held no later than 20 days after the date of the filing of the motion, and may order the defendant to be examined by no more than 3 experts, as needed, prior to the date of the hearing. Attorneys for the state and the defendant may be present at any examination ordered by the court.

[13] The legal test for insanity in Florida in criminal cases is the 'M'Naghten Rule.'" *Patton v. State*, 878 So. 2d 368, 374 (Fla. 2004) (citations omitted). "Under M'Naghten, an accused is not criminally responsible if, at the time of the alleged crime, the defendant, by reason of a mental disease or defect, (1) does not know of the nature or consequences of his or her act; or (2) is unable to distinguish right from wrong." 878 So. 2d at 375 (citations omitted).

Ex. 9G, p. 10).  Petitioner admitted on cross-examination that he understands the difference between right and wrong but, due to his mental health issues and brain damage, he cannot refrain from wrongdoing.  (Id. at p. 15).  Petitioner further testified that, if counsel had properly investigated his competency, he would have pursued an insanity defense.[14]

Counsel testified at the evidentiary hearing that he requested the psychological evaluation for sentencing purposes only, not because he questioned Petitioner's sanity at the time of the offenses or Petitioner's competence to enter a plea.  (Doc. 21, Ex. 9G, pp. 24-25, 32-33).  Counsel testified that nothing in Dr. McClain's report suggested Petitioner was insane when he committed his crimes or that Petitioner was incompetent to enter a plea.[15]  (Id. at pp. 26-29).  Counsel further testified on

---

[14]  Petitioner testified:

Q:    All right, now, I'm going to give you an opportunity to finalize your position.  Go ahead.

. . . .

A:    And Ground 2 is the insanity.  Well, from what I've learned, under the reasonable professional norm, any attorney would have had at least, you know, done further research into the effects of symptoms of, you know, what I was diagnosed with by Dr. McClain.  I mean, I got some pamphlets over there I'd like to submit to the court just on bipolar disorder type 1 alone, you know.  I mean, I've stated it for the record the symptoms, you know, everything that the patient or the victim , whatever he is, the person suffering from it, goes through.

Had he even researched the effects of the symptoms, you know, he could inform the defendant, me, of the fact that because of manic episodes that are said to occur with people that suffer from this disorder, the M'Naughten standard would definitely have applied because the defendant may have suffered from at least one manic episode during that day.

I mean, pretty much, I wouldn't have accepted a plea, you know.  All in all, I would not have accepted a plea if I'd known 100 percent that I was going to get the max, 50 years, because, let's face it judge, I was 27 years old; seventy-seven years old, that's a life sentence.

(Doc. 21, Ex. 9G, pp. 20-21).  Petitioner acknowledged upon questioning by the state post-conviction judge that he faced a maximum penalty of life imprisonment if convicted at trial.

[15]  Dr. McClain testified at Petitioner's sentencing hearing that Petitioner suffered several head injuries as a result of multiple motorcycle accidents.  (Doc. 21, Ex. 1D, p. 7).  Dr. McClain also testified on cross-examination by the prosecutor as to her opinion of Petitioner's competence:

(continued...)

cross-examination by Petitioner that he did not file a Rule 3.210(b) motion "[b]ecause there was

never any indication that [Petitioner] w[as] incompetent." (Id. at p. 35).  Following the evidentiary

hearing the state post-conviction court rejected Petitioner's ground of ineffective assistance of

counsel:

> The Defendant alleges counsel was ineffective for failing to move for a psychological
> examination pursuant to Florida Rule of Criminal Procedure 3.210(b).   The
> Defendant submits that counsel's failure to file a motion for examination resulted in
> the Defendant's entering a coerced plea due to mental health problems.   The
> Defendant also claims that he would not have entered the plea if he had been aware
> of a viable insanity defense.
>
> [Counsel] testified that he arranged for an independent psychological evaluation of
> the Defendant because the Defendant had suffered numerous head injuries.[16]  He
> testified that the purpose of that psychological evaluation was for mitigation at

---

[15](...continued)

Q:     Okay.  He's competent to - - for this sentencing; correct?

A:     Yes.  My opinion is he's competent.

Q:     And I assume that your opinion isn't that he met the McNaughten [sic] standard at the time
       of this offense?

A:     I did not evaluate him for the McNaughten [sic] standard.

(Doc. 21, Ex. 1D, p. 15).

[16]  Counsel testified:

Q:     You requested a psychological examination in this case.  What was the reason for that
       request?

A:     In talking to Mr. Dinaso, I was aware of numerous injuries he had received.  The ones that
       concerned me the most were motor vehicle injuries.  I think at least, I believe, three motor
       vehicle injuries, and at least one of those being a motorcycle.  So, we wanted to take a look
       and see if there was brain - - any brain injury.

Q:     But was the purpose of that for sentencing or for some other reason?

A:     For sentencing.

(Doc. 21, Ex. 9G, p. 25).

sentencing - not for purposes of considering an insanity defense or determining whether the Defendant was competent to enter a plea.

[Counsel] went on to say that he never requested an evaluation pursuant to rule 3.210(b) because the psychological report from the independent evaluation confirmed what the Defendant told him about his brain injuries and did not provide any indication that the Defendant was incompetent.  Without reason to believe the Defendant was incompetent, counsel cannot be found ineffective for not filing a motion pursuant to rule 3.210(b).  Pursuant to rule 3.210(b)(1), when defense counsel files a motion for examination, such motion "shall contain a certificate of counsel that the motion is made in good faith and on reasonable grounds to believe that the defendant is incompetent to proceed."  The testimony before this court leads to the conclusion that [counsel] had no basis for filing a motion for examination pursuant to rule 3.210(b).

Furthermore, to the extent the Defendant argues that counsel did not investigate or pursue an insanity defense, he is not entitled to relief.  The Defendant stated at the evidentiary hearing that he understood the difference between right and wrong.[17]  An insanity defense in unavailable to defendants who are able to tell that their acts were wrong.  *See Miller v. State*, 805 So. 2d 885 (Fla. 2d DCA 2001).  Counsel cannot be found ineffective for failing to raise a meritless claim.  *See Freeman v. State*, 761 So. 2d 1055 (Fla. 2000).  Accordingly, the court finds that counsel was not ineffective.

(Doc. 21, Ex. 9J, p. 3).

---

[17]  Petitioner testified on cross-examination:

Q:      Okay.  You know it is illegal to steal, correct?

A:      I'm well aware of the law, sir.

. . . .

Q:      Okay.

A:      I understand the difference between right and wrong, all right?

Q:      You do?

A:      Yes, sir.  But, due to my mental health issues, I can't refrain from doing wrong, due to brain damage.

(Doc. 21, Ex. 9G, p. 15).

The federal standard for competency to stand trial[18] is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him.  *See Godinez v. Moran*, 509 U.S. 389, 396-97 (1993) (citing *Dusky v. United States*, 362 U.S. 402 (1960) (*per curiam*); *Drope v. Missouri*, 420 U.S. 162, 171 (1975)).  A defendant must be competent when he pleads guilty.  Florida law requires a competency evaluation only if the court or counsel "has [a] reasonable ground to believe that the defendant is not mentally competent to proceed."  *Dessaure v. State*, 55 So. 3d 478, 482 (Fla. 2010).

Petitioner does not allege, much less demonstrate, that any mental infirmity rendered him unable to understand the plea proceedings or consult with counsel.  Petitioner at the plea colloquy exhibited no difficulty answering the court's questions.   He coherently expressed (1) his understanding of the rights he was giving up by entering a plea, (2) his understanding of the sentence he faced and the significance of the fifty-year sentencing cap, and (3) his satisfaction with trial counsel's representation.  (Doc. 21, Ex. 1E, pp. 9-11).  Petitioner averred that he had never been treated for mental illness and was not under the influence of any medication on the day he entered his plea.  (Id. at pp. 10-11).  The record does not support, and Petitioner does not demonstrate, that he lacked "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," or that he did not have a "rational as well as factual understanding of the proceedings against him" due to a mental infirmity or a lack of psychiatric medication.  *See Dusky*, 362 U.S. at 402.

---

[18] The standard governing competency to enter a valid guilty plea is that same standard for competency to stand trial.  *Godinez v. Moran*, 509 U.S. 389, 398-99 (1993).

In the context of an ineffective assistance of counsel claim in which a petitioner faults trial counsel for failing to investigate or act upon a petitioner's alleged incompetence, the petitioner must do more than raise a bare allegation of incompetence. Rather, he must allege facts suggesting either that counsel was aware of signs indicating petitioner's incompetence and unreasonably failed to act upon them, or that counsel unreasonably failed to investigate the petitioner's competence. *See Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigation unnecessary . . . . [A] particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments.").

Petitioner, relying only upon Dr. McClain's report and his own unsubstantiated allegations, fails to set forth a basis upon which to conclude that his trial counsel ignored facts, viewed objectively, that raised a bona fide doubt about Petitioner's competency to enter a guilty plea. Petitioner does not account for his demonstrated rational behavior and coherent responses at the plea hearing which support the objectively reasonable conclusion that there was no genuine issue of his competency to enter his plea. Petitioner fails to point to evidence creating a substantially legitimate doubt about his competence to enter his plea and fails to show there was a reasonable probability of a different outcome at the plea hearing if his counsel had further investigated Petitioner's competency.

As to counsel's failure to pursue an insanity defense, Petitioner cannot obtain relief. Petitioner does not allege that he was insane when he committed the crimes nor does he present any evidence to substantiate his allegation that he had a "viable" insanity defense. Petitioner signed a sworn change of plea form that includes an acknowledgment that he waived "the right to employ any

25

defenses" that he may have had.  (Doc. 21, Ex. 9C, change of plea form, p. 1).  Petitioner likewise acknowledged during the plea colloquy that, by pleading guilty, counsel would "not be asserting defenses."  (Doc. 21, Ex. 1G, transcript of Aug. 29, 2005, change of plea hearing, p. 9).

Even assuming that counsel performed deficiently by failing to present an insanity defense, Petitioner cannot demonstrate that this defense likely would have succeeded at trial.  Section 775.027(1), Florida Statutes,[19] provides that "[i]t is an affirmative defense to a criminal prosecution that, at the time of the commission of the acts constituting the offense, the defendant was insane."  The statute further provides that to establish an insanity defense a criminal defendant must prove that (1) he has a mental infirmity, disease, or defect, and (2) because of this condition, the defendant did not know what he was doing or its consequences or did not understand that what he was doing was wrong.  Fla. Stat. § 775.027(1)(a), (1)(b)(1), (1)(b)(2).  A criminal defendant bears the burden of proving insanity by clear and convincing evidence.  Fla. Stat. § 775.027(2).

Petitioner presents no evidence substantiating a viable insanity defense. *See Presnell v. Zant*, 959 F.2d 1524, 1533 (11th Cir. 1992) (rejecting defendant's ineffective assistance of counsel claim based upon attorney's failure to raise insanity defense because defendant failed to come forward with evidence supporting insanity defense).  Petitioner's admission at the Rule 3.850 evidentiary hearing that he understands the difference between right and wrong precludes the viability of an insanity defense. *See Reaves v. State*, 826 So. 932, 938 (Fla. 2002) ("Insanity is a complete defense if, at the time of the crime, the defendant was incapable of distinguishing between right and wrong as a result of a mental disease or defect.") (footnote omitted).  Petitioner fails to meet his burden of establishing

---

[19] This statute codifies the "M'Naghten Rule." *See Patton*, 878 So.2d at 374-75.

that the state post-conviction court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting this ground. *See* 28 U.S.C. § 2254(d)(1), (2).

Accordingly, it is **ORDERED AND ADJUDGED** that Petitioner's Section 2254 petition (Doc. 1) is **DENIED** with prejudice. The clerk is directed to enter judgment against Petitioner and close this case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** in chambers this 26th day of March, 2014.

JAMES D. WHITTEMORE
United States District Judge

27